1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4      THE HON. JUDGE JOHN A. KRONSTADT, JUDGE PRESIDING

5

6   MICHAEL GRECCO PRODUCTIONS, INC.,  )
                                       )
7                   Plaintiff,         )
                                       )
8          vs.                         ) No. 19-CV-535-JAK
                                       )
9   EVOLVE MEDIA, et al.,              )
                                       )
10                  Defendants.        )
    _____)
11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                Telephonic Conference

16               Los Angeles, California

17              Monday, June 15, 2020

18

19

20

21

22

23        LISA M. GONZALEZ, CSR No. 5920, CCRR
              U.S. District Courthouse
24       312 North Spring Street - Room 438
             Los Angeles, California 90012
25        213.894.2979; www.lisamariecsr.com

```
 1   APPEARANCES:

 2

 3   FOR THE PLAINTIFF:     PERKOWSKI LEGAL PC
                            BY:  PETER E. PERKOWSKI, ESQ.
 4                          445 South Figueroa Street Suite 3100
                            Los Angeles, CA 90071
 5                          213-426-2137

 6

 7   FOR THE DEFENDANT:     LAW OFFICE OF RICARDO CHAVEZ
                            BY:  RICARDO ALAN CHAVEZ, ESQ.
 8                          425 South Beverly Drive
                            Beverly Hills, CA 90212
 9                          310-553-8580

10                          JASSY VICK CAROLAN LLP
                            BY:  JEAN-PAUL JASSY, ESQ.
11                          AND  ELIZABETH HOLLAND BALDRIDGE
                            800 Wilshire Boulevard Suite 800
12                          Los Angeles, CA 90017
                            310-870-7048
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              Los Angeles, California, Monday, June 15, 2020;
 2                            9:30 a.m.
 3                              -o0o-
 4              THE CLERK:  The court is now in session on Item
 5    CV-19-535-JAK, Michael Grecco Productions, Inc., versus
 6    Evolve Media, LLC, et al.
 7              Counsel, I am going to state your name; and if you
 8    would please answer in the affirmative if you are present on
 9    the line.
10              Peter Perkowski.
11              MR. PERKOWSKI:  I am present with my intern,
12    Evan Martin.  Thank you.
13              THE CLERK:  Thank you.
14              Jean-Paul Jassy.
15              MR. JASSY:  Present.
16              THE CLERK:  Elizabeth Baldridge.
17              MS. BALDRIDGE:  Present.
18              THE CLERK: Thank you, Counsel.
19              Are there any other counsel on the line whose name
20    I have not mentioned?
21              MR. CHAVEZ:  Good morning, Your Honor.
22    Ricardo Chavez here as prior counsel for Evolve Media.
23              THE CLERK:  Thank you, Mr. Chavez.
24              Anyone else?
25              Your Honor, we're ready to begin.
```

```
1              THE COURT:  Thank you.

2              We are proceeding today telephonically, but the

3    same rules apply here as they would in the courtroom, which

4    include that there's to be no recording made of today's

5    proceedings by any person, other than the court reporter.

6    If anyone wants a transcript, you need to obtain it through

7    the court reporter.  Any violation of this instruction would

8    constitute a violation of the court order.

9              Second, if you're not speaking and you have a mute

10   feature on your phone, please use it.  It simplifies hearing

11   for the court reporter.

12             And, third, please state your name each time

13   before you speak so the court reporter knows who's speaking.

14   And recognize, please speak slowly.

15             Mr. Chavez, are you no longer counsel?

16             MR. CHAVEZ:  Mr. Chavez speaking.

17             Yes, Your Honor.  I've submitted paperwork from

18   the court and have not received any communication back

19   acknowledging that I am out of the case now.

20             THE COURT:  I see.  All right.

21             And, Mr. Jassy, will you and Ms. Baldridge be

22   representing the defendant today?

23             MR. JASSY:  Yes, that's correct.  We're

24   representing just one defendant, ViacomCBS Inc., Your Honor.

25             THE COURT:  Sorry.  Mr. Chavez, who's your client?
```

1          MR. CHAVEZ:  Evolve Media, Arron Broder as the

2    person most knowledgeable.

3          THE COURT:  All right.  Let me proceed.  We're

4    here today on the motion to dismiss the second-amended

5    complaint brought with respect to the new party.

6          Just a moment.

7          The key issue that's being presented by the motion

8    to dismiss is whether the claims for copyright with respect

9    to the two images are time-barred and whether that issue can

10   be resolved on the motion to dismiss.  The standard is

11   whether a reason -- could no reasonable fact finder conclude

12   that the delay -- the alleged delay and the discovery of the

13   alleged infringement was reasonable on the motion to

14   dismiss.

15         My tentative view is that this issue, as alleged

16   in this complaint, is sufficiently alleged, that it meets

17   that standard.  And if I adhere to that view, it would be

18   obviously without prejudice to the issue being renewed in

19   the future based on a factual record.

20         The only moving party that's moved to dismiss is

21   Viacom.  Viacom was in control of the relevant website

22   between 2008 and 2014, and it became under the control of

23   Evolve.  And the question is whether Viacom is -- whether

24   the claims against Viacom are time-barred, as I mentioned.

25         The allegations in the complaint reflect that the

1  two images were published -- the images were published in

2  2007 and 2010, one each time.  Given that there's a

3  three-year statute of limitations absent some form of

4  tolling or the discovery rule, the statute of limitations

5  for those two publications would have expired in 2010 and

6  2013.  The complaint was filed -- the original complaint in

7  this case was filed in January 2019.

8       The -- as I mentioned, the issue is one of the

9  application of the discovery rule and the due diligence.

10       Just a moment.

11       So step one is the running of the statute apparent

12  on the face of the complaint; and for the reasons I just

13  stated, the three-year term is placed at issue by the

14  complaint.

15       Second, again, as I've stated, the discovery rule

16  can be associated with the three-year statute and that is

17  ordinarily often deemed a question of fact.  And the issue

18  then is whether there's actual knowledge or constructive

19  knowledge; and constructive knowledge that's at issue based

20  on the allegations and these -- some factors that other

21  district courts have considered have included the extent of

22  an investigation, the size of the library of copyrighted

23  material held by the plaintiff, the plaintiff's

24  sophistication as a copyright litigant, and whether the

25  alleged infringing material is well known or well

1    trafficked.

2          The issue that's being presented, then, is, as I

3    say, whether the allegations here are sufficient.  I'm

4    mindful that two other district -- judges in this district

5    have addressed similar issues with respect to this plaintiff

6    in the *BDG Media* and *Ziff Davis* cases.  Each judge concluded

7    that under the allegations of those complaints, they were

8    not sufficient.

9          I'm also mindful that the plaintiff is a

10   sophisticated copyright litigant.  I think the evidence

11   shows more than 50 actions brought in the Central District

12   and at least 95 nationwide in the last 12 years.  So in that

13   sense, there is a level of sophistication.  It's not that

14   that's alleged in the complaint, of course.

15         But I think the distinction between this case and

16   the two others to which I've referred is that the

17   allegations here, in terms of the nature of the

18   investigation that was done and the volume of materials to

19   review, are sufficient to get -- to adequately state a basis

20   for the application of the discovery rule.  I think these

21   are in greater detail than in the two prior complaints, and

22   I think, therefore, this is, as I stated, an issue that

23   should be addressed on a factual record, not on the basis of

24   the complaint.

25         So, Mr. Jassy, Ms. Baldridge, who will be

1    addressing this for the moving party?

2            MR. JASSY:  I will, Your Honor.  This is Jean-Paul

3    Jassy.

4            THE COURT:  Thank you.  Please, Mr. Jassy, where

5    do I have it wrong?

6            MR. JASSY:  Thank you for explaining your

7    tentative, Your Honor.

8            There's a couple of things I do want to emphasize,

9    I think, certainly with respect to the tentative.  One is

10   that it is plaintiff's burden.  And I don't know if that's

11   something that was already covered in Your Honor's thinking

12   about the issue, but that is something that was raised quite

13   a bit in the opposition saying that it was, in fact,

14   defendants' burden to show that the discovery rule does not

15   apply, but it's quite clear from case law, including cases

16   cited by the plaintiff, that it is plaintiff's burden to

17   show that the discovery rule shall apply.

18           I think what really matters here ultimately is

19   that I agree, Your Honor, there are more paragraphs talking

20   about the method of reverse searching in this complaint than

21   there were in the *BDG Media* amended complaint or the

22   *Ziff Davis* amended complaint, but they boil down to the same

23   issue, and that is the size of the plaintiff's library is

24   big, that's been the case all along, and the Internet is big

25   and it's a vast place, and it's not always easy to search.

1          Those are constants, I think, between the

2    *BDG Media* case, the *Ziff Davis* case and this case.  The

3    description of the different methods of reverse searching, I

4    think, actually were in force, but there were many different

5    ways that plaintiff could have gone about looking to use

6    particular photos.  And, in fact, the amended complaint in

7    this case concedes that it could have been done going back

8    as late as -- or early as 2010, which is a little different

9    than some of the other cases.

10          Judge Fischer, for example, in the *Ziff Davis* case

11   took judicial notice that these technologies were available

12   going back to 2011, but what really matters, I think, at the

13   end of the day, in this case -- and it's the same as what

14   Judge Birotte mentioned in the *BDG Media* case -- is that

15   although this Court, Your Honor, in Docket Number 69, said

16   specifically, you should amend your complaint to look at

17   such limitation issue and try to get around the

18   statute-of-limitations issue.

19          This complaint, the second-amended complaint in

20   our case before us, has no allegations, and the opposition

21   states no facts as to when a search for the images at issue

22   started or that there was any particular difficulty in

23   finding them.  That's exactly the same -- so we're talking

24   about the same library, the same letterhead.

25          And Judge Birotte pointed out, that was a major

1 problem.  There is no allegation that plaintiff was even

2 looking for those photos, and plaintiff actually concedes at

3 page 11 of the opposition that, quote:  "It is possible that

4 the images in suit were not included in the search subset

5 for some portion of the relevant time period," end quote.

6          So there's no explanation for why the images at

7 issue could not have been found within three years of

8 publication or even within three years before filing suit.

9          So the length and the breadth of these

10 allegations, they're more, yes, but they all boil down to

11 the same thing.  And there's no relationship back to these

12 images.  It all comes back to one paragraph, paragraph 93,

13 very vague description of when the photographs were found

14 and suggested that they very well found them almost

15 immediately after they started looking for them.  But it's

16 the same library; it's the same Internet.

17          And there's no allegations that they even tried to

18 look for these photos or there's any particular difficulty

19 in finding them.  And that's exactly what Judge Birotte was

20 thinking about and looking at in his order in the *BDG Media*

21 case.

22          And the same result should apply here,

23 particularly because it's plaintiff's burden and because

24 this Court specifically gave leave to address the

25 statute-of-limitations issue and didn't do it with respect

1 to these images.  Just talking about these images, didn't do

2 it, and that's why this motion should be granted.

3          And there are other cases, many other cases that

4 we've cited where courts have found on a motion to dismiss

5 that it is appropriate to find no reasonable fact finder

6 could conclude under the circumstances that the discovery

7 rule should apply.  And that's plaintiff's burden, and it

8 has not been met in this case.

9          THE COURT:  Mr. Jassy, let me ask you this.

10 That's helpful.

11          When you refer to the allegations here being

12 insufficient, you've cited paragraphs 92 and 93 of the

13 amended-complaint, and you refer -- I mean, more

14 specifically to 93.

15          In paragraph 92, it's alleged that in or about May

16 2018, one of plaintiff's staff members realized that there

17 was a connection between CraveOnline and Mandatory.com and

18 this led to other searches.

19          Why do you consider that insufficient for pleading

20 purposes?

21          MR. JASSY:  I don't really know what that

22 allegation by the plaintiff means, Your Honor.  It's not

23 specific to these particular images.  It's not a website

24 that was controlled by our client, ViacomCBS at the time, so

25 I don't really know what to make of that allegation.  It's

```
 1    certainly not talking about the Kate Walsh image
 2    specifically.  That does come up in paragraph 93, but
 3    nowhere here, Your Honor, does it say in the second-amended
 4    complaint that they've started looking for those two images
 5    at any particular point in time and -- or that there's any
 6    difficulty in finding those images.
 7            And that's, I think, really the crux of it.  And
 8    that's what Judge Birotte was talking about in the BDG Media
 9    case.  Yes, there's a lot of allegations about size of the
10    library and the difficulty and expense generally of
11    searching the Internet, but I don't know what to make of
12    that statement in paragraph 92.  It doesn't seem to relate
13    specifically to these images.  And then when we do see
14    something to relate to these images, there's nothing talking
15    about when they actually started to look for them.
16            THE COURT:  Mr. Perkowski, please proceed.
17            MR. PERKOWSKI:  Thank you, Your Honor.
18    Peter Perkowski for the plaintiff.
19            Just starting with where you ended, 93 --
20    paragraph 93 of the second-amended complaint really pertains
21    to the X files images not to the Kate Walsh and the Xena
22    images.  I allege in the second-amended complaint, 88 --
23    those are X files as well.
24            Excuse me.  I don't have that cite right with me,
25    but those images were found by one of the search engines,
```

1  and I can't -- there's no way for me to explain why those

2  search engines did not locate those images before, despite

3  Mr. Jassy's statement that there's no allegation why there

4  was any difficulty finding these images.

5          On the contrary, there are 15 or 20 allegations

6  about the barriers and obstacles and limitations of Internet

7  searching in general.  And demanding that there should be or

8  must be specific allegations regarding these specific images

9  on this specific website is like asking for an explanation

10 of why plaintiffs did not find a particular needle in a

11 large haystack full of many needles.  That's impossible.

12 That's tantamount to demanding perfection.

13         The question for Your Honor, as you recognize, is

14 whether plaintiff should have found these images sooner.

15 And that is a question of the reasonableness of plaintiff's

16 diligence.  And we have 30-some allegations about the

17 diligence of what we've done in attempting to find these and

18 all of the images.  I don't -- I can't explain why --

19 Mr. Jassy wants to know why we didn't search for these two

20 images.

21         Well, there are 6,000 images to select from.  How

22 come I didn't select this image versus Image 5,137 to put in

23 a search engine.  We're doing the work that we can do in

24 order to find and enforce, and all of that is explained in

25 the second-amended complaint.

| | |
|---|---|
| 1 | THE COURT:  Well, let me ask you this question. |
| 2 | If I were to adhere to my tentative view -- as I stated, |
| 3 | this would be a common issue, a factual issue that could be |
| 4 | presented in the form of a motion with fact, with evidence |
| 5 | presented.  In that context, you would have to present |
| 6 | evidence supporting what you're alleging here and what |
| 7 | you've just argued. |
| 8 | And if the facts -- if the -- what would be added |
| 9 | in the sense -- given -- starting around paragraph 87 of the |
| 10 | second-amended complaint which is preceded with the title, |
| 11 | "The discovery of the photograph in this action," and you |
| 12 | describe events there, is the evidence going to be different |
| 13 | than that?  Is that all of it is question one. |
| 14 | Two, in the context, as Mr. Jassy stated earlier, |
| 15 | in the context of the Internet which is vast, in the context |
| 16 | of being able to search, can present work, why is this a |
| 17 | sufficient allegation to say this was reasonable? |
| 18 | I mean, the two questions are related if you |
| 19 | follow me.  The point being, what else can you show? |
| 20 | Because if this is all you can show, then, could the issue |
| 21 | now be evaluated? |
| 22 | Second, what is the evidence -- how does that |
| 23 | evidence get evaluated in light of the Internet?  What |
| 24 | evidence would there be on that? |
| 25 | MR. PERKOWSKI:  I understand, Your Honor.  I did |

```
 1   not prepare a second-amended complaint as if it were a

 2   declaration or in preparation for a deposition or even trial

 3   testimony.  My intention was to put in the necessary facts

 4   to demonstrate what we did in this case and contextual

 5   evidence about how our search efforts are generally

 6   conducted.  I believe that would be fleshed out by

 7   additional testimony that adds whatever might be needed in

 8   terms of these specific images and probably documentary

 9   evidence as well.

10           So certainly there's no documentary evidence here,

11   but I did the basic facts that would demonstrate what

12   occurred.  And I think that my attempt or my intent was to

13   make sure there was enough here to survive summary judgment,

14   but not burden the Court or the parties with a prolix

15   complaint that was more than is necessary, if that makes

16   sense.

17           THE COURT:  You just said you put in enough here

18   to survive a motion for summary judgment.  Is that what you

19   meant, or did you mean a motion to dismiss?

20           MR. PERKOWSKI:  I did not.  Thank you, Your Honor.

21   I meant a motion to dismiss.

22           THE COURT:  All right.  Thank you.

23           Mr. Jassy.

24           MR. JASSY:  Your Honor, this complaint doesn't

25   have any more substantively than the complaint that was
```

1  rejected in BDG Media.  Yes, both complaints talk about the

2  size of the library book, complaints talk about the size of

3  the Internet.  And I'm looking at pages 7 to 8 of

4  Judge Birotte's decision in *BDG Media*, which I think is

5  really the point.

6         It says the plaintiff does -- quote, "The

7  plaintiff does mention that finding copyright infringements

8  can be difficult, time-consuming and expensive."  And then

9  there's a citation.  "However, plaintiffs fails to allege

10  that these are the reasons for its delay in discovering

11  defendants' alleged infringements in the flashlight photo

12  articles," end quote.

13        And then goes on to say, on page eight, quote,

14  "Nowhere in its opposition does plaintiff explain that it

15  started a search for the flashlight photos three years

16  before it was able to obtain a result or that this is the

17  rate at which its detection system operates," end quote.

18        The same is true here.  There's no allegation in

19  the second-amended complaint that they started to search for

20  these photos.  And this is talking about a decade,

21  Your Honor, I mean, give or take between the two photos.

22  And here in the *BDG Media* case, it was even less time.

23        I'm not sure I understand how Mr. Perkowski can

24  say that they've alleged enough to get past a motion to

25  dismiss when it doesn't even explain when they started to

 1   look for these photos.

 2           And then the opposition goes on to say, it's

 3   possible we weren't looking for these photos at all.  The

 4   question is we got to go allegation by allegation, alleged

 5   infringement by alleged infringement, and this case is about

 6   more than just the Kate Walsh image and the Xena image.  But

 7   with respect to ViacomCBS, it's only about those two images,

 8   and it's not -- I'm sorry.

 9           THE COURT:  No, no, I understand.

10           MR. JASSY:  And it's just not specifically

11   alleged, it's just not sufficiently alleged.

12           I think that Judge Birotte really has it right,

13   and Judge Fischer had it right because otherwise we're

14   talking about basically an open-ended statute of limitations

15   under the circumstances.  And this is nearly ten years --

16   again, give or take -- looking at the two photos for how

17   long -- how much time went by, and it's just not reasonable

18   under the circumstances.  It's plaintiff's burden, and it

19   has not been sufficiently alleged.

20           THE COURT:  All right.  That's helpful.

21           MR. PERKOWSKI:  Your Honor, if I may,

22   Peter Perkowski, briefly.

23           I would argue that to the extent there isn't --

24   Your Honor believes there isn't sufficient allegations

25   concerning these specific images; and when we began

1    searching for them, the issue about which of 10 million

2    images of plaintiffs, 15,000 of which are retouched and

3    therefore provided to clients in paragraph 70 of its

4    second-amended complaint, the selection of which of those to

5    conduct searching on is a question of reasonableness as

6    well.

7             Plaintiff has to select a discrete set to conduct

8    searching on.  That set changes, it increases over time, and

9    when on notice of particular uses from other parties,

10   plaintiff conducts additional searches that may result in

11   additional hits, and that's all adequately alleged.

12            THE COURT:  Let me ask you this, Mr. Perkowski.

13   If there were to be discovery on the issue of the

14   reasonableness of the inquiry or the reasonableness of the

15   investigation, who would the witness be, or would you

16   produce a 30(b)(6) witness if that were requested?

17            MR. PERKOWSKI:  Well, there are only three people

18   employed by plaintiff who are involved in the searching, so

19   that would be Michael Grecco himself, his archivist,

20   Mykle Parker, and his -- I forget her title, but there's a

21   third person who works on these searches and working up

22   these cases for enforcement.  So it would either be one or

23   three of those people, plaintiff included, and Mr. Grecco

24   included who would provide that testimony.  And I believe

25   all three were involved in these images at suit here.

```
 1              THE COURT:  Well, were all three of them -- well,

 2     was at least one of them involved going back prior to the

 3     2017, 2018 event, inasmuch as the three-year period as to

 4     these images would have expired prior to that?

 5              MR. PERKOWSKI:  Yes, Michael Grecco, of course,

 6     would be involved in going back the entire time.

 7              THE COURT:  Mr. Jassy, let me ask you this similar

 8     question -- and I understand the position that each of you

 9     are taking, and I'll reflect on them in the order -- but if,

10     hypothetically, you were able to take a single deposition

11     focused on the issue of the effectiveness of the

12     investigation and then presented that evidence, as well as

13     what other evidence you wanted to offer in support of a

14     motion for summary judgment, what's wrong with that

15     approach?

16              MR. JASSY:  I think the problem with that approach

17     is just the fundamental problem with requiring a plaintiff

18     to allege enough facts to overcome a motion to dismiss,

19     Your Honor, and the expense and the burden associated with

20     that.  He had an opportunity -- they had an opportunity to

21     address the statute-of-limitations issue, and if they had

22     the facts -- and bare in mind, we filed the prior motion to

23     dismiss on statute-of-limitations grounds, so they knew

24     exactly what our argument was.

25              And they came back here and they said again -- and
```

1   I'm really not disputing this, Your Honor.  Obviously

2   plaintiff has a lot of images.  I respect that fact, he is

3   an accomplished photographer, and the Internet is a big

4   place.  It's hard to search.  But it's the same library,

5   it's the same search, it's the same issues, it's the same

6   thing that was being confronted with Judges Birotte and

7   Fischer in the *Ziff Davis* and *BDG Media* case.

8           So making a defendant go through discovery when

9   the plaintiff can't even make an allegation that can support

10  a burden -- their burden is -- it's not something that is

11  fair, Your Honor, and -- under the circumstances.

12          And I think that's exactly what was reflected in

13  the *BDG Media* case and in the *Ziff Davis* case.  And they

14  have an opportunity to make their allegation and these

15  decisions are available for them to consider.

16          And you have to go through discovery to go through

17  summary judgment; you know, I understand that under normal

18  circumstances it's a question of fact, but case after case,

19  the two that we've talked about *Minden, Goldberg*, *Napster*,

20  they've all come to a conclusion that this is a decision

21  that can be made on a motion to dismiss.

22          And under the circumstances, this is the type of

23  circumstance because they can't even make the allegation.

24  And yet we have to go through discovery and then summary

25  judgment to disprove an issue.

1        And I'm not even getting into the fact that my

2   client hasn't even controlled this website since 2014 and

3   the burdens associated with that.  I don't think that

4   there's -- the point of discovery is to test certain

5   allegations in the complaint.  They haven't even made the

6   allegations, Your Honor.  They haven't even made the

7   allegations and presumably that's because they can't.  After

8   all these opportunities, they can't, and that's the problem.

9        THE COURT:  All right.  Thank you.

10       I will reflect on your arguments and issue a

11  written order.

12       Today was also set just to check in on the

13  settlement process.  I know you've worked with Ms. Title.

14  And at this point, is it your view, Mr. Jassy, that if there

15  were to be further discussions with Ms. Title it would be

16  only after this motion is resolved?

17       MR. JASSY:  I think that's right, Your Honor.

18  Just to be clear, we were not part of any discussions with

19  Ms. Title because Viacom was added into this case, I

20  believe, after any discussions with Ms. Title, but we do

21  believe the motion should be granted.  So I think it would

22  really not be productive until after --

23       THE COURT:  I understand.

24       Mr. Perkowski, anything further?

25       MR. PERKOWSKI:  No, Your Honor.

1           THE COURT:  As I say, I'll reflect on your

2    arguments and issue an order.  And if the motion is granted,

3    then that will resolve the issue on whether there should be

4    further discussions among all defendants and Ms. Title.

5           If the motion is denied, I would suggest counsel

6    should confer, then, about a possibility of resuming

7    discussions with Ms. Title, a very able neutral.

8           All right.  Thank you all very much.

9               (*Thereupon, proceedings adjourned*)

10

11                            -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4

 5                         CERTIFICATE

 6

 7         I hereby certify that pursuant to Section 753,

 8   Title 28, United States Code, the foregoing is a true and

 9   correct transcript of the stenographically reported

10   proceedings held in the above-entitled matter and that the

11   transcript format is in conformance with the regulations of

12   the Judicial Conference of the United States.

13

14   Date:  August 28, 2020

15

16                              Lisa M. Gonzalez
                         /s/_____
17                       Lisa M. Gonzalez, U.S. Court Reporter
                         CSR No. 5920
18

19

20

21

22

23

24

25
```